UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SAKAJUST SCOTT,

        Petitioner,

    v.                                              Case No. 18-C-373

RANDALL HEPP,

        Respondent.

---

**DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

In September 2013, a Milwaukee County jury found Sakajust Scott guilty of first-degree intentional homicide while using a dangerous weapon. After an unsuccessful motion for postconviction relief and appeal, Scott filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 8, 2018, asserting that both his trial and postconviction counsel provided ineffective assistance of counsel in violation of his Sixth Amendment rights. Scott claims that his trial attorney failed to effectively move for the suppression of the incriminating statement police obtained from him allegedly in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981). Scott claims his postconviction attorney failed to effectively raise the issue in the motion for postconviction relief filed on his behalf. The case was initially stayed to allow Scott to fully exhaust his state court remedies. Exhaustion of those remedies having now been completed, Scott's federal petition will be denied.

## BACKGROUND

On October 19, 2012, Henry Bishop was shot and killed in the parking lot of a Milwaukee gas station. Dkt. No. 18-22 at 27. A video recording from a surveillance camera showed a

confrontation between Bishop and the shooter and then Bishop backing up with his hands in the air. As Bishop backs out of the view of the camera, the assailant is seen firing multiple shots. When police arrived, they found Bishop lying on the concrete parking lot and spent casings lying nearby. Bishop had been shot nine times.

Two witnesses remained at the scene. Matthew Sample said he saw a man walking backwards in the gas station parking lot with his hands in the air saying "[n]o man, no." Dkt. No. 18-8 at 37–38. Sample then saw the man fall down, at which point, another individual walked up to the man and shot him three times in the chest. *Id.* at 39. A second witness, Reggie Melton, pulled into the gas station parking lot and heard "three to four shots" before ducking behind a gas pump. *Id.* at 44. Melton witnessed an individual standing over the man on the ground and watched the individual get into a red Ford and pull out of the parking lot. *Id.* at 44–45. Neither could identify the shooter.

Law enforcement officers linked the red Ford Taurus to Ashley Crumwell, the mother of Scott's child. Dkt. No. 18-19 at 12–13. Crumwell told police, and testified in court, that on the night of the shooting, she had gone out with her parents to a casino, and when she returned her vehicle was gone, as was Scott. *Id.* at 14. She said that Scott returned with the red Ford Taurus shortly after midnight. *Id.* Scott told her that he "got into it with some people and he shot a guy." *Id.* Scott told Crumwell it all started when a panhandler was harassing Scott about wanting change and later "smarted off" to Scott, prompting him to pull out a gun and shoot the panhandler. *Id.* at 26. At trial, Crumwell testified that Scott later called her and told her to "plead the fifth," or in other words, to not testify. *Id.* at 16.

A woman named Antoinette Carter also testified at Scott's trial. *Id.* at 30. Carter testified that she was at the gas station the night of the shooting and witnessed a red car pull into the parking

2

lot with Scott at the wheel. *Id.* at 33. She witnessed Scott pull out a gun and then put it back into his pants before entering the gas station. *Id.* at 35. Carter testified that she was looking at her phone when she heard gunshots and looked up to see a man on the ground. *Id.* As she was pulling away, Carter saw Scott walking back toward the red car he arrived in. *Id.* at 36.

In addition to the foregoing evidence, the State also introduced a video of Scott's stationhouse interview in which he had admitted to police that he shot Bishop multiple times. Scott told police that he became enraged when Bishop insulted Scott after Scott rebuffed Bishop's request for 50 cents. The only explanation Scott offered was that he was drunk. The jury rejected the argument of Scott's attorney that the evidence offered by the State was not reliable and found him guilty of first-degree intentional homicide while using a dangerous weapon.

Following his conviction, Scott filed a motion for postconviction relief. Now represented by new counsel, Scott claimed that his trial attorney provided constitutionally deficient representation by failing to seek suppression of his confession on the ground that he had previously invoked his right to counsel at the time of his arrest. Scott's trial counsel had unsuccessfully moved to suppress Scott's statement before trial on the ground that he was under the influence of drugs and alcohol and his statement was therefore involuntary but had not challenged it on the ground that it was obtained in violation of his rights under *Edwards v. Arizona*. *Edwards* held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." 451 U.S. at 484. Scott now claimed that, when he was placed under arrest several weeks after the shooting, he informed arresting officers that he did not know what he was being arrested for and that he wanted an attorney. Dkt. No. 21-1 at 3. Scott supported his motion with sworn statements from Michael

3

Crumwell and Ashley Crumwell, who were present at the time of the arrest and who also claimed to have heard Scott make this request. *Id.* at 3–4.

Scott further alleged in his motion that, following his arrest, he was held in a room at the police station for several hours, until a detective interviewed him. Dkt. No. 18-16 at 25, 46. Scott did not dispute that, before questioning, the detective advised him of his *Miranda* rights and he agreed to answer questions. Citing *Edwards*, however, Scott claimed that because he had asked for an attorney at the time of his arrest, police should not have initiated further conversation by interviewing him.

The trial court denied Scott's motion without a hearing, holding that the facts alleged did not support his claim for relief as required under *State v. Allen*, 2004 WI 106, ¶¶ 9, 13, 274 Wis. 2d 568, 682 N.W.2d 433. The Wisconsin Court of Appeals affirmed, holding that Scott failed to allege in his motion that he told his trial attorney about his alleged post-arrest request for counsel. Dkt. No. 18-5 at ¶¶ 11–13. Alternatively, the court of appeals concluded that Scott's motion failed on the merits because "the law is currently unclear as to whether a defendant may effectively invoke the Fifth Amendment right to counsel at a time when custodial interrogation is not imminent or impending." *Id.* at ¶ 14 (citing *State v. Hambly*, 2008 WI 10, ¶¶ 2, 4–5, 307 Wis. 2d 98, 745 N.W.2d 48). Noting that a defendant's lawyer in a criminal case is not required to object and argue a point of law that is unsettled, the court concluded that Scott's trial lawyer had no obligation to pursue the claim Scott had raised. *Id.*

After the Wisconsin Supreme Court denied his petition for review, Scott filed a second motion for postconviction relief in which he alleged that his first postconviction counsel had provided ineffective assistance by failing to sufficiently allege that he had invoked his Fifth Amendment right to counsel at a time when he reasonably believed that interrogation was

4

impending or imminent. The trial court again denied Scott's motion without a hearing, and the Wisconsin Court of Appeals affirmed, holding that Scott had already litigated the issue of whether his Fifth Amendment right to counsel was violated and was barred from relitigating the same issue. The Wisconsin Supreme Court once again denied Scott's petition for review, at which time the stay in this Court was lifted.

## ANALYSIS

Scott's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.* The determination of factual issues made by a state court is presumed to be correct, which presumption is overcome only by clear and convincing evidence. § 2254(e)(1).

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

5

possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Scott asserts that both his trial and appellate counsel provided ineffective assistance. Claims of ineffective assistance of trial counsel are governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The combination of *Strickland* and AEDPA requires deference upon deference from federal courts reviewing the constitutionality of state criminal convictions. *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013); *see also Hoglund v. Neal*, 959 F.3d 819, 833 (7th Cir. 2020) ("When

6

asserting an ineffective assistance of counsel claim in an AEDPA petition for a writ of habeas corpus, petitioner faces the obstacle of double deference. He must show the state court's decision is contrary to or involved an unreasonable application of the *Strickland* standard."). Given this double deferential standard, Scott's petition must be denied.

Both of Scott's claims of ineffective assistance of counsel are premised on the assumption that his trial attorney's failure to move for suppression of his confession based on his anticipatory invocation of his Fifth Amendment right to counsel constitutes deficient performance under *Strickland*. But as the Wisconsin Court of Appeals explained in affirming Scott's conviction and the denial of his first postconviction motion, neither state nor federal law on the issue is clearly established and thus his trial attorney's failure to seek suppression on that basis was not constitutionally deficient. Dkt. No. 18-5 at ¶ 14 (citing *Hambly*, 307 Wis. 2d 98, ¶¶ 2, 4–5).

*Miranda* held that before a suspect can be subjected to custodial interrogation, he must be advised, *inter alia*, of his right to remain silent; that anything he says may be used against him in court; that he has a right to have an attorney present during questioning; and that if he cannot afford an attorney, one will be provided for him at public expense. 384 U.S. at 444–45. Only after waiving these rights can questioning proceed. *Id.* Where police fail to comply, any resulting statement is inadmissible in the state's case in chief.

In *Edwards v. Arizona*, the Court held that once an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation. 451 U.S. at 484. Having expressed his desire to deal with the police only through counsel, the Court held, such an accused "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or

7

Case 2:18-cv-00373-WCG   Filed 01/19/22   Page 7 of 10   Document 37

conversations with the police." *Id.* at 484–85. The obvious intent of the rule the Court created in *Miranda*, and further refined in *Edwards*, is "to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

The question presented in this case is whether an accused can effectively invoke his Fifth Amendment right to counsel at the time of his arrest so as to cut off questioning long before any attempt is even made to question him and the required warnings are given. Although some of the language in *Miranda*, *Edwards*, and various other cases suggests that the right to counsel can be so invoked, the United States Supreme Court has not decided this issue. Indeed, in *McNeil v. Wisconsin*, the Court noted that it had "in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . ." 501 U.S. 171, 182 n.3 (1991); *see also Bobby v. Dixon*, 565 U.S. 23, 28 (2011) (same). The Court went on in *McNeil* to explain why a rule allowing a suspect to anticipatorily invoke his Fifth Amendment right to counsel in such a way may not follow from its precedents:

> Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

*Id.* In other words, the impact a suspect's invocation of his *Miranda* rights has on law enforcement's efforts to investigate crime and the admissibility of evidence at trial warrants careful consideration before expanding it beyond the context of custodial interrogation. This is especially true since the law enforcement officers tasked with interrogating the suspect are often not the same as the arresting officers to whom the earlier invocation may have been made and thus may be unaware that the suspect invoked his right to counsel.

It should also be noted that the rule Scott seeks to apply is not needed to protect an accused from the risk *Edwards* addressed—police tactics designed to badger a suspect into waiving his previously invoked right to counsel. Police must still advise a suspect of his *Miranda* rights before questioning can occur, and a suspect remains free to cut off all questioning and any further effort to change his mind simply by clearly invoking those rights. *Davis v. United States*, 512 U.S. 452, 459 (1994). In this case, for instance, the trial court found that Scott was properly advised of, and voluntarily waived, his *Miranda* rights before he confessed to shooting Bishop. Scott does not challenge that finding in his petition.

In sum, the state court decisions affirming Scott's conviction and denying his motions for postconviction relief were neither contrary to, nor unreasonable applications of, clearly established federal law as determined by the Supreme Court of the United States. Even if it is true that Scott told his attorney that he asked for an attorney at the time of his arrest, his attorney's failure to move for suppression of his confession on that basis was not constitutionally deficient under *Strickland*. Scott is thus not entitled to federal relief under § 2254. His petition is therefore denied, and the case dismissed.

The Clerk is directed to enter judgment dismissing the case. The Court will nevertheless grant a certificate of appealability on the claim that counsel's failure to seek suppression of Scott's confession based on his anticipatory invocation of his Fifth Amendment right to counsel constitutes constitutionally deficient performance under *Strickland*. Although the Court has concluded that Scott is not entitled to federal relief, it also finds that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).

Scott is advised that the judgment to be entered by the Clerk is final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 19th day of January, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
